# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| ROBERT M. THOMPSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL ASTRUE, )<br>Commissioner of Social Security )<br>)<br>Defendant. )<br>) | Case No. 3:10-cv-05072-NKL |

## ORDER

Before the Court is Plaintiff Robert Thompson's Social Security Complaint [Doc. # 3]. For the following reasons, the Court reverses and remands to the Administrative Law Judge ("ALJ") for clarification and correction of error.

## I.     Background[1]

This suit involves Plaintiff Thompson's application for disability insurance benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401, et seq. On January 25, 2010, following a hearing, an ALJ found that Thompson was not under a "disability" as defined in the Act. Thompson appeals from that decision.

### A.     Medical Evidence

Plaintiff Thompson alleges disability due to the impairments of: Human Immunodeficiency Virus ("HIV"), hepatitis C, testicular hypogonadism with testosterone

---

[1] The facts and arguments presented in the parties' briefs are duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

deficiency, osteoarthritis of the lumbar spine, rheumatoid arthritis, degenerative joint disease of the cervical spine, ulnar neuropathy, depression, Attention Deficit Hyperactivity Disorder ("ADHD"), fatigue, impaired memory and poor concentration.

The record shows Thompson was treated by Dr. Thomas Harris, M.D., and others, at the Cox Health Center Clinic (a.k.a., Cassville Medical Clinic) and Cox Health Center in Cassville, Missouri, on various occasions between February 28, 2006 and April 26, 2010. [Tr. 232-239, 305-346, 409-417]. Dr. Harris is a prior treating physician of Thompson. The record shows Thompson was treated by Dr. Wolfe Gerecht, M.D., and others, at the Ferrell Duncan Clinic, on various occasions between June 23, 2004 and May 13, 2008. [Tr. 240-304]. Dr. Gerecht is a prior treating infectious disease specialist for Thompson, treating him primarily for his HIV disease, Hepatitis C, and related symptoms of fatigue, poor concentration, memory loss, and depression.

The record shows Plaintiff Thompson was treated by Dr. Stephen Adams, M.D., and others, at the Aids Project of the Ozarks (APO) Clinic, on various occasions between July 14, 2009 to May 28, 2010. [Tr. 347-408, 430-466]. Dr. Adams was Thompson's treating physician and primary care provider at the time of the ALJ decision. The record includes the treatment notes of Dr. Adams and others at the APO Clinic, as well as detailed functional capacity findings on a Medical Source Statement – Physical.

### B. Administrative Hearing

At the administrative hearing, Plaintiff Thompson testified that he had a general education diploma, had worked as a brick layer, and worked masonry odd jobs whenever

he could.  Thompson alleged that he had rheumatoid arthritis in his hands, with stiffness and constant, dull pain; his hand problems were relieved with medication, but it caused drowsiness.  He testified that he had degenerative disease that caused sharp pain in his lower back when he bent over or lifted things like concrete blocks.  Thompson stated that he had a right shoulder injury that did not bother him because he was no longer lifting anything heavy.  He testified to "extreme trouble focusing," memory loss, and fatigue, which had caused him to lose jobs.  Thompson related that he had never declined therapy, although he once went seven days without HIV medication because of his inability to afford it.  Thompson testified that he participated in pastoral counseling, and his physician had recommended psychotropic drugs, but he did not want to take them.  He took Oxycontin for his lower back pain, but it also helped his fingers in the morning.  Thompson stated he napped two to three times per day for two hours.

A vocational expert testified that an individual of Thompson's age, education, work history, and RFC would be capable of performing jobs that existed in significant numbers in the national economy. The vocational expert testified that such an individual would be capable of performing sedentary, unskilled work as a charge account clerk and general clerk.

### C.     The ALJ's Decision

The ALJ found that Thompson had the severe impairments of "human immunodeficiency virus; hepatitis C; hypogonadism; osteoarthritis of the lumbar spine and cervical degenerative join disease/ulnar neuropathy" while dismissing several other

complaints as non-severe. [Tr. 19]. The ALJ ultimately determined that Thompson did not "have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." [Tr. 20].

The ALJ found that Thompson retained the Residual Functional Capacity ("RFC") to "perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a)," while adding several movement and postural limitations. *Id.* The ALJ added that Thompson could not work at "unprotected heights or in temperature extremes of cold, heat and humidity." *Id.*

The ALJ concluded that, while Plaintiff Thompson was unable to "perform any past relevant work" due to his RFC, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." [Tr. 25]. The ALJ noted that the vocational expert who spoke at Thompson's hearing testified that Thompson would be able to perform in occupations such as a charge account clerk or a general clerk. [Tr. 26].

## II.   Discussion

### A.   Standard of Review

In reviewing the Commissioner's denial of benefits, the Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (citation omitted). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of

choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

> **B. Whether the ALJ Properly Determined the Severity of Thompson's Impairments**

Plaintiff Thompson asserts that the ALJ erred by not finding his impairments of depression, impaired memory, and poor focus secondary to ADHD and fatigue, to be "severe" at step two of the five-step sequential evaluation process. Thompson has the burden of proving that his impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). It is not particularly difficult to meet this standard, but the standard is not "toothless." *Id.* at 708.

"Only those claimants with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking the subsequent steps of the sequential evaluation process." *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987). If the ALJ cannot clearly determine what effect an impairment would have on a claimant's ability to do basic work activities, "the sequential evaluation process should not end with the not severe evaluation step." *Id.*

Plaintiff Thompson's claims of ADHD and related symptoms are not well supported by the medical record. Thompson's subjective allegations are not enough to establish his claim. 20 C.F.R. § 404.1528(a) (2011). In May 2008, Thompson sought but

5

was denied prescription drugs for ADD by Dr. Gerecht. [Tr. 302]. Dr. Gerecht opined that Thompson "does not have attention deficit disorder." *Id.*

The record concerning Plaintiff Thompson's alleged depression and fatigue is better developed. Thompson's record shows complaints to multiple medical providers of fatigue and depression. [Tr. 242, 282, 284-285, 297, 299, 302, 349, 351, 381, 404, 406, 448, 451, 455]. Dr. Gerecht advised Thompson that depression was a potential side affect of his HIV medication. [Tr. 256]. Dr. Lalita Chulamokha of the AIDS Project of the Ozarks Clinic recommended a psychiatric consultation for depression in September 2009. [Tr. 407]. Dr. Adams observed in a Medical Source Statement - Physical, on September 9, 2009, that Thompson's fatigue was "moderate to severe," secondary to his HIV. [Tr. 370].

Substantial evidence exists that Plaintiff Thompson suffers from the severe impairments of depression and fatigue. Given the low standard for determining severity, the ALJ erred at step two of the sequential evaluation process. The court remands so the ALJ can obtain an independent doctor's evaluation of Plaintiff Thompson on the issue of his fatigue, depression, and other side effects of HIV, Hepatitis C, and the medication therefor.

**C.    Whether the ALJ Properly Weighed the Medical Opinions**

Plaintiff Thompson next argues that the ALJ failed to give the proper weight to the medical findings of Dr. Adams, his treating physician, and Dr. Gerecht, his treating

6

infectious disease specialist. Evidence from a treating physician is accorded "substantial weight." *Miller v. Shalala*, 8 F.3d 611, 613 (8th Cir. 1993).

In determining an RFC for Plaintiff Thompson, the ALJ gave the medical opinions of Dr. Adams "little weight," apparently substituting his own medical inferences from the record. [Tr. 25]. An ALJ "may not draw upon his own inferences from medical reports." *Dixon v. Barnhart*, 324 F.3d. 997, 1002 (8th Cir. 2003). In explaining his reasoning, the ALJ noted that Dr. Adams' opinion that Thompson was unable to work at a sedentary level was contradicted by "claimant's most recent testing in July 2009 show[ing] an undetectable viral load and CD4 counts of 550, indicative of a disease process that is not as advanced as Dr. Adams' opinions suggest." [Tr. 24]. The ALJ does not explain the significance of the test results, nor is its significance developed in the record. [Tr. 25, 390].

The opinions of Dr. Adams are supported by Dr. Gerecht. Dr. Gerecht's November 2007 report states, "[I]n looking at the overall situation, I do believe [Thompson] is disabled. I expect this is on a permanent basis." [Tr. 285]. The ALJ properly noted that the determination of Thompson's disability is an "issue reserved to the Commissioner." [Tr. 25]; *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

While correctly disregarding Dr. Gerecht's ultimate conclusion concerning Plaintiff Thompson's disability, the ALJ again inappropriately drew his own inferences from the medical reports. The ALJ concluded that "if Dr. Gerecht believed these

7

allegations he would have taken more aggressive action in his treatment of [Thompson]." [Tr. 25].

The ALJ improperly drew inferences from the medical reports of Dr. Adams and Dr. Gerecht. The record needs to be more fully developed regarding what Thompson's test results mean relative to his ability to work, and how those test results may conflict with other tests in the record.

### D. Work History

The court addresses *sua sponte* the question of Plaintiff Thompson's work history. The ALJ, in concluding that Thompson's "activities of daily living are inconsistent with allegations of totally debilitating symptomatology," references evidence in the record that he had been working after the alleged onset of disability date. [Tr. 22, 160]. However, the ALJ concluded earlier in his decision that Thompson's work after the alleged disability onset date was an "unsuccessful work attempt." [Tr. 19].

Work that a claimant is "forced to stop or to reduce below the substantial gainful activity level after a short time because of [his] impairment [is considered] to be an unsuccessful work attempt." 20 C.F.R. § 404.1574(a)(1). The Court directs the ALJ to more fully explain how Thompson's unsuccessful work attempt is inconsistent with his allegations of disability.

## III. Conclusion

It is hereby ORDERED that the matter be REVERSED and REMANDED to the ALJ for reconsideration consistent with this order.

                                                                                        <u>s/ Nanette K. Laughrey</u>  
                                                                                        NANETTE K. LAUGHREY  
                                                                                        United States District Judge

Dated: <u>August 10, 2011</u>  
Kansas City, Missouri